IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLAUDE FANELLI, M.D.,** | : | **CIVIL NO. 1:06-CV–0141** |
| **Plaintiff,** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **CONTINENTAL CASUALTY COMPANY,** | : | |
| **Defendant.** | : | |

## M E M O R A N D U M

Before the court are Plaintiff Claude Fanelli's Motion for Summary Judgment (Doc. 17), Defendant Continental Casualty Company's (hereinafter "Continental") Motion for Summary Judgment (Doc. 20), and Defendant's Motion to Strike Supplemental Exhibit filed by Plaintiff in Support of His Motion for Summary Judgment (Doc. 34). The parties have briefed the issues and the matters are ripe for disposition. For the following reasons, the court will deny Plaintiff's summary judgment motion and grant in part and deny in part Defendant's summary judgment motion. The court will grant Defendant's motion to strike.

## I.        Background

The issue before the court arises out of a dispute over what long term disability benefits Plaintiff is entitled to in connection with an insurance policy issued by Defendant. The following facts are undisputed except where noted.

In 1999, Plaintiff was employed as a full-time interventional cardiologist by Moffitt Heart & Vascular (formerly Moffitt Pease & Lim Associates) in Wormleysburg, Pennsylvania. In connection with his employment, Plaintiff was a participant in a group long term disability income protection plan (hereinafter "the Plan") that was insured by Defendant Continental. The Plan provides a maximum

monthly benefit of $10,000, subject to cost of living adjustments and benefit deductions as provided for in the Plan.

During Plaintiff's employment, in April 1999, Plaintiff was diagnosed with cervical spondylosis with myelopathy and radiculopathy, tremor, and muscle weakness.  The initial diagnosis was subsequently changed to Parkinson's Disease. As a result, Plaintiff was unable to perform all of the functions that had previously been standard aspects of his job, and assumed different, more limited duties, effective June 29, 2000.  Plaintiff became a general cardiologist working for an hourly rate on a limited basis, including office visits, consultations, and test interpretations.  Plaintiff has been disabled as defined by the terms of the Plan since June 29, 2000, and has been entitled to long term disability benefits since December 26, 2000.

Plaintiff began receiving the long term disability benefits from Defendant on December 26, 2000.  On March 11, 2005, Defendant advised Plaintiff that it had overpaid his benefits since January 1, 2002.  Defendant subsequently withheld Plaintiff's benefit payments in order to recoup the amount it had overpaid. Defendant maintains that as of April 2006 it had fully recouped the overpayment and began making payments to Plaintiff once again, in May 2006.

On January 19, 2006, Plaintiff filed a complaint, alleging violations of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*  Plaintiff seeks benefits under an employee welfare benefit plan, injunctive relief,[1] and attorneys' fees and costs.  On June 1, 2006 both parties filed motions for summary judgment, which are presently before the court.  In

---

[1] Plaintiff asks the court to find that Defendant's appeal determination was untimely and thus grant Plaintiff's administrative appeal, and to order the Defendant to disclose to Plaintiff all employee benefit plan information previously requested by Plaintiff.  The court notes that Plaintiff failed to pursue this issue in his brief; thus, this request is deemed to be withdrawn.

addition, on June 19, 2006, Defendant filed a motion to strike a supplemental exhibit filed by Plaintiff in support of his motion for summary judgment, on the grounds that the exhibit was not contained in the administrative record previously reviewed by Continental.

## II.        Legal Standard – Summary Judgment

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *accord Saldana v. Kmart Corp.*, 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. *Id.* at 249. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. *Saldana*, 260 F.3d at 232; *see also Reeder v. Sybron Transition Corp.*, 142 F.R.D. 607, 609 (M.D. Pa. 1992).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, and designate specific facts showing that there is a genuine issue for trial." *Id.* (internal quotations omitted); *see also Saldana*, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing

3

sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden at trial." *Celotex*, 477 U.S. at 322-23. " 'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.' " *Saldana*, 260 F.3d at 232 (quoting *Williams v. Borough of West Chester*, 891 F.2d 458, 460-61 (3d Cir. 1989)).

The standards governing the court's consideration of Federal Rule 56(c) cross-motions are the same as those governing motions for summary judgment, although the court must construe the motions independently, viewing the evidence presented by each moving party in the light most favorable to the nonmovant. *Raymond Proffitt Found. v. U.S. Envtl. Prot. Agency*, 930 F. Supp. 1088, 1096 (E.D. Pa. 1996).

## III.    Discussion

### A.    Defendant's Motion to Strike

As a threshold matter, the court will grant Defendant's motion to strike the supplemental exhibit (Pl.'s Ex. O) filed by Plaintiff, because the authority in this circuit clearly establishes that the court's review is limited to the administrative record. As the parties acknowledge, the arbitrary and capricious standard of review applies to the court's review of a denial of ERISA benefits. *Kosiba v. Merck & Co.*, 384 F.3d 58, 67 n.5 (3d Cir. 2004). Under that standard, the court reviews the "evidence that was before the administrator when he made the decision being reviewed" – the administrative record. *Id.*; *Mitchell v. Eastman Kodak Co.*, 113 F.3d 433, 440 (3d Cir. 1997). The court may, as Plaintiff points out, consider evidence outside the record regarding potential biases and conflicts of interest when determining whether the arbitrary and capricious or a higher standard is appropriate.

4

*Kosiba*, 384 F.3d at 67 n.5.  However, when reviewing the plan administrator's decision itself, under either the regular or a heightened arbitrary and capricious standard, the court's review is confined to the administrative record, which may not be supplemented during litigation.  *Id.*  Although the court may consider the supplemental exhibit when identifying the appropriate standard of review, the court finds that it does not contribute to the court's analysis of the factors relevant to that inquiry.  Accordingly, the court will grant Defendant's motion to strike Plaintiff's supplemental exhibit and will not consider Plaintiff's Exhibit O when reviewing the plan administrator's benefits determination.

**B.**     **Standard of Review**

Because Plaintiff challenges a denial of benefits under ERISA, 29 U.S.C. § 1132(a), the court must first identify the applicable standard of review. Claims arising from a denial of benefits under ERISA, like the instant one, are to be reviewed "under a *de novo* standard unless the benefit Plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).  When the Plan affords such discretionary authority, the arbitrary and capricious standard of review applies and the court may overturn a benefits denial "only if it is 'without reason, unsupported by substantial evidence or erroneous as a matter of law.' " *Abnathya v. Hoffman-La Roche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (quoting *Adamo v. Anchor Hocking Corp.*, 720 F. Supp. 491, 500 (W.D. Pa. 1989)).

However, "when an insurance company both funds and administers benefits, it is generally acting under a conflict that warrants a heightened form of the arbitrary and capricious standard of review."  *Pinto v. Reliance Standard Life Ins. Co.*, 214 F.3d 377, 378 (3d Cir. 2000).  The parties agree that the heightened

standard of review applies here because Continental insures the Plan and has discretion to determine eligibility for benefits.  The parties differ though, in their assessments of how heightened that standard should be.

The heightened standard uses a fact-specific, sliding scale approach that "intensif[ies] the degree of scrutiny to match the degree of the conflict." *Id.* at 379, 392.  It involves deference, but not absolute deference; thus, the court "look[s] not only at the result – whether it is supported by reason – but at the process by which the result was achieved." *Id.* at 393.  *Pinto* identified a non-exclusive list of "*potentially* relevant" factors to consider, including the sophistication of the parties, the information accessible to the parties, the exact financial arrangement between the insurer and the company, and the current status of the fiduciary (e.g. whether it is stable or in a state of dissolution). *Pinto*, 214 F.3d at 392 (emphasis added); *Kosiba v. Merck & Co.*, 384 F.3d 58, 64 (3d Cir. 2004).  Accordingly, a conflict of interest is simply one factor within the standard, *Pinto*, 214 F.3d at 393, but not the only relevant consideration, *Kosiba*, 382 F.3d at 65.

In addition, the *Pinto* court identified procedural anomalies that contributed to its finding that a heightened arbitrary and capricious standard was appropriate, *id.* at 394, which has also become a factor considered by reviewing courts. *See, e.g.*, *Kosiba*, 384 F.3d at 66 (considering "demonstrated procedural irregularity, bias, or unfairness in the review of the claimant's application for benefits"); *Stratton v. E.I. Dupont De Nemours & Co.*, 363 F.3d 250, 256 (3d Cir. 2004) (acknowledging failure to comply with required plan procedures is a component of the heightened standard although Stratton did not make a procedural argument).

Plaintiff argues for a severely heightened standard, primarily relying on the threshold conflict of interest and procedural violation factors, but fails to

establish grounds for applying more than a somewhat heightened standard of review.[2]  The court will address each factor in turn.[3]

### 1. <u>Structural Conflict of Interest</u>

A slightly or somewhat, versus severely, heightened standard is not inconsistent with the existence of a conflict of interest arising "when an insurance company is both plan administrator and funder," *Pinto*, 214 F.3d at 387.  *See Smathers v. Multi-Tool, Inc./Multi-Plastics, Inc. Employee Health & Welfare Plan*, 298 F.3d 191, 199 (3d Cir. 2002) (applying  "somewhat heightened" scrutiny where employer was "directly funding a portion of the plan and [was] benefitted by denying the [potentially $22,522.78] claims").[4]

Here, Defendants currently calculate the overpayment as $104,879.78; Plaintiff maintains that, should the court find that there was an overpayment, it is correctly calculated as $73,935.44.  Thus, the amount at stake here is, roughly, either three or four times as much as the amount at issue in *Smathers*.  In addition, Continental is not Plaintiff's employer.  However, if these distinctions warrant application of a more stringent standard than the "somewhat heightened" *Smathers* standard, they do not do so significantly.  Thus, the court finds that the instant structural conflict supports applying a somewhat heightened arbitrary and capricious

---

[2]  The heightened arbitrary and capricious standard does not shift the burden away from the plaintiff.  *Pinto*, 214 F.3d at 392.

[3]  Plaintiff does not advance arguments based on sophistication disparity, accessibility to information, or the financial status of Defendant.  However, the court agrees with Defendant that Plaintiff's representation by competent counsel neutralizes any sophistication concerns here.  In addition, the court has not found, nor has Plaintiff alleged, unequal access to information, employer involvement in the funding of the Plan, or financial difficulties on the part of Defendant.  Thus, none of these factors provide a basis for raising the standard of review.

[4]  Although courts have found the risk of an employer's (versus an independent insurer's) conflict of interest to be diminished because of the mitigating factors of loss of morale and higher wage demands, the court found such incentives to be weaker in *Smathers* because the plaintiff was no longer employed by the defendant when his claim was under consideration.  *Id.* at 198.

standard that is perhaps higher than the somewhat heightened standard of *Smathers*, but not the severely heightened standard that Plaintiff advocates.[5]

## 2. **Procedural Anomaly**

Despite Defendant's failure to comply with ERISA regulations, Plaintiff fails to establish the existence of the kind of procedural anomalies that would heighten the standard of review. Plaintiff argues that a severely heightened standard of review is required because Defendant failed to comply with ERISA regulations related to the claims appeals process. The ERISA regulations provide, in relevant part, that when a claimant appeals an adverse benefit determination, the plan administrator must notify the claimant of its benefit determination on review "within a reasonable period of time, but not later than 45 days after receipt of the claimant's request for review by the plan, unless the plan administrator determines that special circumstances . . . require an extension of time for processing the claim." 29 C.F.R. §§ 2560.503-1(h), 2560.503-1(i)(3). In addition, the regulations specify that, where a plan administrator determines that a time extension is required,

> written notice of the extension shall be furnished to the claimant prior to the termination of the initial [45]-day period. In no event shall such extension exceed a period of [45] days from the end of the initial period. The extension notice shall indicate the special circumstances requiring an extension of time and the date by which the plan expects to render the determination on review.

---

[5] The court acknowledges that this result may be unsatisfying and the explanation of the court's standard wanting, as predicted in *Pinto*. 214 F.3d at 392-93. However, it is consistent with the standards applied by courts in the Third Circuit. *See, e.g., Stratton v. E.I. Dupont De Nemours & Co.*, 363 F.3d 250, 255 (3d Cir. 2004) (applying a slightly heightened standard where the structural conflict of interest was sufficiently safeguarded, but a sophistication imbalance existed with respect to a $9,829.05 claim); *Bowman v. Hartford Life & Accident Ins. Co.*, No.4:04-CV-02191 2005 WL 2370852, at *7-9 (M.D. Pa. Sept. 27, 2005) (applying a slightly heightened standard where there was a slight disparity in sophistication, tempered by competent counsel, and structural conflict alone triggered the *Pinto* baseline); *Byrd v. Reliance Standard Life Ins. Co.*, No. Civ.A.04-2339, 2004 WL 2823228, at *2 (E.D. Pa. Dec. 7, 2004), *aff'd* 160 F. App'x 209 (3d Cir. 2005) (applying a "slightly" heightened standard where structural conflict was the sole contributing factor).

*Id.* §§ 2560.503-1(i)(1)(i) and (i)(3).

The parties agree, and the administrative record reflects, that Defendant received Plaintiff's appeal of the March 11, 2005 adverse benefit determination on May 20, 2005. (Doc. 27, pt. I, at HLI-00084; HLI-00219-222.) Defendant's "claim notes" regarding Plaintiff, which appear to be a computer generated report of entries to his Plan file, comport with this finding. (*Id.* at HLI-00066.) The claim notes further reflect that the appeal was forwarded to the appeals team at 3:35 p.m. on May 20, 2005, and a letter acknowledging the initiation of the appeals process was sent to Plaintiff and his counsel, Ms. Kathryn Simpson, shortly thereafter. (*Id.* at HLI-00066, HLI-00084.)

Defendant subsequently sent a letter to Ms. Simpson, dated June 7, 2005, stating that it was following up on the May 20, 2005 appeal and that it had made an error regarding Plaintiff's benefit calculations. (*Id.* at HLI-00082-83.) Although Defendant had calculated the overpayment as $109,144.23 on March 11, 2005 (*id.* at HLI-00089-91) it re-calculated the overpayment to be $102,385.43, which was offset by amounts already recovered (*id.* at HLI-00082-83). The June 7, 2005 letter further stated that Plaintiff's file "is now being sent to appeals for review" and that the appeals team would "issue a ruling within 45 days of receipt of [Plaintiff's] appeal." (*Id.*) The letter also referred to the possibility of a 45-day extension pursuant to ERISA regulations. (*Id.*) However, the June 7, 2005 claim note in Plaintiff's file contains only the description, "Benefit Explanation"; it fails to reflect any further action with respect to the pending appeal or the initiation of a new appeal. (*Id.* at HLI-00065.)

On July 8, 2005, the appeals team sent an extension notice to Plaintiff, stating that the formal appeal review would not be completed "within 45 days of receipt of the appeal request." (*Id.* at HLI-0080.) The letter, which was not sent

directly to, or copied to, Ms. Simpson, failed to explain why an extension was necessary, but only stated that an extension of time was required and that the appeals team anticipated "making a decision within the next 45 days which will end on 8/22/05." (*Id.*)

Ms. Simpson sent Defendant a letter on August 29, 2005, noting that it had been 101 days since the appeal was filed and stating that she had not received any notice that an extension was needed. (*Id.* at HLI-00189.) On September 1, 2005, Defendant sent Ms. Simpson the decision on appeal, which affirmed the benefits determination. (*Id.* at HLI-0078-79.) The appeals decision referenced the March 11, 2005 determination and affirmed its overpayment calculation of $109,144.23. (*Id.*) In addition, on September 9, 2005, Defendant replied to Ms. Simpson's August 29, 2005 inquiry regarding the untimeliness of the appeal decision and failure to provide an extension notice, stating only that an extension letter had been sent to Plaintiff on July 8, 2005. (*Id.* at HLI-00076.) Defendant gave no indication at that time that its appeals period calculations were based on a June 7, 2005 filing date. (*Id.*)

Defendants argue that the June 7, 2005 notification regarding the calculation error re-set the filing date of the appeal. The court finds that the record fails to support this conclusion. Although the June 7, 2005 notice stated that Plaintiff's file was "now being sent to appeals for review," (*id.* at HLI-00083) it did not clearly state that the appeal filing date was being changed from May 20, 2005 to June 7, 2005. Defendant's claim notes also fail to support that position. Moreover, there is nothing in the record or in the ERISA regulations that indicates that the filing date of a request for an appeal may be re-set in such a way even if it were clear that Defendant intended to do so. In addition, the bulk of the record supports a

finding that Defendant continued to view the letter received on May 20, 2005, as the triggering event for the appeal.

Accordingly, the first forty-five day appeals period would have expired on July 5, 2005,[6] and the limit for any extension period would have been August 19, 2005. Thus, Defendant sent the July 8, 2005 extension notice three days after the expiration of the initial appeals period. The September 1, 2005 determination on appeal exceeded the allotted appeals period by thirteen days.[7] In addition, the July 8, 2005 extension failed to provide all of the information required by the ERISA regulations. Therefore, the court finds that Defendant did not comply with ERISA's required procedures.[8]

However, these procedural violations fail to rise to the level of the procedural anomalies identified in *Pinto*. Defendant's conduct may have been careless, imprecise, and even sloppy, but Plaintiff fails to establish that it was suspiciously so, or amounted to an inconsistent or impartial manner of decision-making based on the facts at hand. In *Pinto*, the "procedural anomalies" included "self-serving" selectivity, "inconsistent treatment of the same facts," and a pattern of choosing the decision disfavorable to Pinto whenever the administrator was at a

---

[6] The forty-fifth day would actually have been July 4, 2005, but the court assumes that it would have been extended to July 5th due to Independence Day.

[7] The court notes that Defendant issued the decision on appeal ten days after August 22, 2005 – its stated anticipated decision date and end of the forty-five day period following the July 8, 2005 notice.

[8] Although Ms. Simpson's August 29, 2005 letter to Defendant (*id.* at HLI-00189) interpreted Defendant's failure to comply with ERISA regulations as a grant of Plaintiff's appeal, neither party has presented argument or authority regarding that issue; the only arguments advanced address whether the procedural non-compliance here justifies a heightened standard. In the absence of authority establishing that ERISA requires a particular result in such circumstances, the court will conduct its analysis within the context of the existing case law regarding the effect of procedural anomalies. Barring a finding that the procedural violations satisfy the procedural anomaly inquiry, the court considers the thirteen day delay to be *de minimis*.

crossroads. *Kosiba*, 384 F.3d at 66 (discussing *Pinto*, 214 F.3d at 393, 394); *cf. Skretvedt v. E.I. Dupont De Nemours & Co.*, 268 F.3d 167, 175-76 (3d Cir. 2001) (declining to increase the standard of review where Defendant's conduct was not inconsistent with procedure but also failed to raise the specter of impartiality); *Marciniak v. Prudential Fin. Ins. Co. of Am.*, No. 05-4456 2006 WL 1697010, at *1-2 (3d Cir. June 21, 2006) (reasoning that "procedural anomalies" as intended by *Pinto* require an element of suspicion or bad faith; finding the heightened standard of review was not warranted where "there [was] no evidence of inconsistency or subterfuge" and because "Marciniak fail[ed] to point to any of the kind of suspicious or anomalous hijinks in Prudential's decision making process as were present in *Pinto* . . . ."). Because Plaintiff fails to show that Defendant's procedural violations were suspicious or in bad faith, the court will not increase the standard of review based on this factor.

Accordingly, the only factor supporting a heightened standard here is the structural conflict. As discussed above, the court declines to impose the severely heightened standard that Plaintiff seeks based on that factor, but will apply a somewhat heightened arbitrary and capricious standard.

## C.   **Application of the Heightened Standard to Defendant's Decisions Regarding Plaintiff's Benefits**

### 1. **Plan Provisions**

The parties do not dispute that, based on the unambiguous Plan provisions, Plaintiff was not entitled to all of the benefits that he received. Plaintiff's first twelve months of benefits were governed by the Return to Work incentive provision (*id.* HLI-00004), which entitled Plaintiff to the full monthly disability benefit of $10,000 plus COLA unless his monthly income exceeded $20,000. The parties agree that Plaintiff received the full benefit for the first twelve

months.  At the conclusion of the initial twelve-month period, the Rehabilitation Benefit provision governs.  Pursuant to that provision, the full monthly benefit is reduced by a percentage based on the relationship between the claimant's actual monthly income and his pre-disability monthly income.  (*Id.* at HLI-00008.)  For example, under the Rehabilitation Benefit provision, if a claimant's current monthly earnings were 25% of his pre-disability monthly earnings, he would be entitled to 75% of the full $10,000 monthly benefit, or $75,000, plus applicable COLA.  Finally, the Plan also clearly provides that the Plan may recoup any inadvertent overpayment of benefits.  (*See id.* at HLI-00032A, HLI-00056.)

Plaintiff presents no arguments that the Plan language is unambiguous, or that, based strictly on the Plan language itself, Plaintiff is entitled to the full amount of the benefits he seeks.  Plaintiff explicitly states in his brief in opposition to Defendant's summary judgment motion that "Plaintiff does not disagree with Defendant that the Plan is unambiguous."  (Doc. 31 at 11.)  Rather, Plaintiff maintains that Defendant modified the terms of the Plan in a January 22, 2001 letter to Ms. Simpson (Doc. 27, pt. II, at HLI-00334), which is the cornerstone of Plaintiff's estoppel argument.  In addition, Plaintiff argues that laches precludes Defendant from recouping an overpayment here.

Accordingly, the court finds that the Plan language is unambiguous.  Based on the clear language of the Plan, Plaintiff was not entitled to receive the full $10,000 per month benefit beyond the initial twelve-month period covered by the Return to Work provision, unless he satisfied the criteria for such a payment under other Plan provisions that applied after that time period.  Thus, absent the application of estoppel or laches, if Defendant correctly found that it erroneously overpaid benefits to Plaintiff and correctly calculated the overpayment, the decision to recoup those benefits was not arbitrary and capricious even under a somewhat

heightened standard of review.  Similarly, given the same conditions, Defendant's decision on appeal to affirm that benefit determination would not have been arbitrary and capricious.  The court will now address the estoppel and laches issues in turn.

## 2.  **Estoppel Claim**

Plaintiff's estoppel claim is unavailing because Plaintiff fails to prove that he reasonably relied upon a material misrepresentation made by Defendant or that extraordinary circumstances existed.  Plaintiff argues that Defendant's January 22, 2001 letter amended the terms of the ERISA benefits plan.  The January 22, 2001 letter concluded an exchange of correspondence between the parties concerning the benefits to which Plaintiff was entitled shortly after Plaintiff began receiving benefits in December 2000.  The letter acknowledges Plaintiff's qualification for benefits under the Return to Work provision and sets forth Defendant's benefit calculations based on Defendant's monthly earnings at that time.  (*Id*.)  The third and fourth paragraphs of the letter discuss Plaintiff's eligibility for benefits in terms of the "Rehabilitation" provisions and "Rehabilitation" benefits.  (*Id*.)  Although the court can see how these references to Rehabilitation benefits could be confusing and could support an interpretation that Defendant's reference to a $20,000 limit on compensation and bonuses applied to the Rehabilitation Benefits provision indefinitely, the unambiguous language of the Plan refutes such an interpretation.

The Return to Work provisions of the Plan clearly characterize the return to work incentive as a liberalization of the Rehabilitation benefit formula.  (Doc. 27, Pt. I, at HLI-00004.)  That liberalization, which is limited to the first twelve months of benefit payment, is what provides for receipt of the full $10,000 benefit payment, so long as the claimaint's total monthly earnings do not exceed

14

100% of his pre-disability income.[9] (*Id.*)  Because the Plan clearly defines when and how the Rehabilitation provision may be modified in this way, the January 22, 2001 letter fails to establish that the calculations applied beyond the twelve-month Return to Work incentive period.  Rather, Defendant's references in the January 22, 2001 letter to Plaintiff's entitlement to benefits under the Rehabilitation provision are consistent with the clear language of the Plan that the Rehabilitation provision, as temporarily modified by the Return to Work position, governed Plaintiff's benefits at that time.  Accordingly, Plaintiff fails to establish a material misrepresentation by Defendant.

Moreover, the interplay between the language of the January 22, 2001 letter and the Plan provisions, in conjunction with the well-established rule of the Third Circuit precluding informal amendments to ERISA plans, precludes a finding of reasonable reliance.  Defendant's reply brief in support of its summary judgment motion provides an extensive listing of Third Circuit cases that establish that ERISA sets forth formal requirements for amending benefit plans and expressly preclude informal amendments such as the January 22, 2001 letter.  *See, e.g.*, *Depenbrock v. Cigna Corp.*, 389 F.3d 78, 81-83 (3d Cir. 2004); *Haberern v. Knaupp Vascular Surgeons Ltd. Defined Benefit Pension Program*, 24 F.3d 1491, 1501 n.6 (3d Cir. 1994); *Hozier v. Midwest Fasteners, Inc.*, 908 F.2d 1155, 1164 (3d Cir. 1990). Therefore, the court finds that it was not reasonable for Plaintiff to rely upon the

---

[9]  In this case, 100% of Plaintiff's pre-disability average monthly income was $53,852.  On January 22, 2001, Defendant calculated Plaintiff's monthly earnings as $22,917.  That amount, plus the monthly benefit of $10,000, equaled $33,917. $53,852, minus $33,917, equals roughly $20,000.  Thus, $20,000 is the maximum additional amount that Plaintiff could earn during the time the Return to Work provision was applicable in order to continue receiving the maximum benefit of $10,000.  The court acknowledges that the letter did not state this as clearly as it could have, but the figure corresponds to the Plan's explanation of how the Return to Work policy is applied.  (*See id.*)

January 22, 2001 letter as an amendment that altered his entitlement to the benefits set forth by the unambiguous terms of the Plan.

Finally, the court finds that Plaintiff fails to establish the kind of intentional acts or bad faith on the part of Defendant that would satisfy the extraordinary circumstances element.  In the Third Circuit, extraordinary circumstances "generally involve acts of bad faith . . . attempts to conceal a significant change in the plan, or commission of fraud."  *Jordan v. Federal Express Corp.*, 116 F.3d 1005, 1011 (3d Cir. 1997).  Here, Defendant's failure to realize that it was overpaying Plaintiff's benefits for more than three years certainly exhibits carelessness and incompetence, both of which are consistent with a finding that Defendant's actions were inadvertent.  None of the evidence before the court establishes that Defendant intentionally made errors related to the administration of Plaintiff's benefits, or that it attempted to conceal information or otherwise commit fraud against Plaintiff.  Thus, Plaintiff fails to establish the extraordinary circumstances required for an estoppel claim under ERISA.  Because Plaintiff fails to state a cause of action for equitable estoppel under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), the court will deny Plaintiff's motion for summary judgment and grant Defendant's motion for summary judgment with respect to this claim.

### 3.  **Laches Claim**

Plaintiff also fails to establish that Defendant's recoupment efforts should be barred by laches.  Plaintiff offers scant authority or argument for this premise.  However, "the doctrine of laches is an affirmative defense [that] addresses inexcusable delay on the part of the party bringing a claim, to the prejudice of the party asserting the defense."  *Haymond, Napoli Diamond, P.C. v. Haymond*, No. Civ.A. 02-721 2004 WL 2030134, at *16 (E.D. Pa.) (citing *Degussa v. Constr.*

*Chem. Operation*, 280 F. Supp. 2d 393, 411 (E.D. Pa. 2003).  Thus, Plaintiff may not assert laches here because it is not in the appropriate position to do so.

Moreover, even if laches were available to Plaintiff, the court finds no inexcusable delay here.  Plaintiff fails to establish that Defendant knew of its error prior to March 11, 2005.  (*See* Doc. 27, Pt. I, at HLI-00228.)  The claim notes for Plaintiff's file reflect that Defendant immediately notified Plaintiff after identifying the error.  (*Id.*)  This does not comport with the concept of inexcusable delay.  Accordingly, the court will deny Plaintiff's summary judgment motion and grant Defendant's summary judgment motion with respect to the issue of laches.

At this stage of the analysis, the court does not find that Defendant's actions were arbitrary and capricious, even under a heightened standard, because the language of the Plan is unambiguous, and Plaintiff's estoppel and laches arguments are unavailing.  However, the court may still find that the benefits determination and subsequent decision on appeal were arbitrary and capricious if Defendant's calculations regarding the overpayment meet that standard.  The court thus turns to the issue of the overpayment.

### D.   <u>Overpayment</u>

The final issue in dispute concerns Defendant's calculation of the amount of the overpayment.  Based on the court's review of the administrative record, the court concludes that the part of the determination finding that benefits had been overpaid was not arbitrary and capricious; thus summary judgment for Defendant is proper on this issue.  With respect to the part of the initial determination related to Defendant's calculation of the overpayment itself, as well as Defendant's decision on appeal with respect to the overpayment calculation, the court finds that summary judgment is not proper.

Both parties agree that, pursuant to the unambiguous terms of the Plan, Plaintiff was not entitled to continue receiving the full benefit payment allotted by the Return to Work provision after the first year.  Because the court has found Plaintiff's estoppel and laches arguments to be without merit, the court finds that Defendant's determination that there had been an overpayment was not arbitrary and capricious.  Thus, the court will grant Defendant's summary judgment motion and deny Plaintiff's summary judgment with respect to this issue.

However, the court's review of Defendant's determination of the amount of the overpayment is more complicated.  As noted previously, under the heightened standard, the court reviews not only "the result – whether it is supported by reason – but at the process by which the result was achieved."  *Pinto*, 214 F.3d at 393.  After a careful review of the record, the court is hard pressed to find a consistent and accurate manner of determining the overpayment that is supported by the record evidence.

Defendant set forth Plaintiff's average monthly income figures, their relationship to Plaintiff's pre-disability average monthly income, and the subsequent determinations of monthly benefits owed for 2002, 2003, 2004, and 2005 in the March 11, 2005 letter to Plaintiff (Doc. 27, Pt. I, at HLI-00089-91), the June 7, 2005 "recalculation letter" to Ms. Simpson (*id.* at HLI-00082-83), and the September 1, 2005 decision on appeal (*id.* at HLI-00078).  Defendant also offered a summary of similar calculations in its brief in support of its summary judgment motion (Doc. 22 at 21-22).

Based on these documents, the parties do not dispute that Plaintiff's pre-disability average monthly income was $53,852.  The parties also appear to be in agreement regarding Plaintiff's average monthly income figures for 2003 ($14,774) and 2004 ($15,466).  In addition, the parties ultimately appear to agree that

Plaintiff's average monthly income for 2005 was $14,733.[10]

Otherwise, Defendant's numbers rarely match and are disputed by Plaintiff. Beyond the differences between Defendant's numbers and those suggested by Plaintiff, Defendant has offered at least three different calculations of the amount of benefits to which Plaintiff was entitled in 2002. In addition, Defendant has offered three different estimates of the total overpayment: $109,144.23 (Doc. 27, Pt. I, at HLI-00089), $102,385.43 (*id.* at HLI-00082), and $104,879.78 (Doc. 22 at 22).[11] The September 1, 2005 decision on appeal affirmed the same amount as the March 11, 2005 determination ($109,144.23), but did so after Defendant had sent correspondence acknowledging that it had made erroneous calculations and re-calculating the total overpayment as $102,385.43. (Doc. 27, Pt. I, at HLI-00082.) Moreover, the Defendant has repeatedly referenced typographical errors and other errors in calculations in its correspondence with Plaintiff, Ms. Simpson, and in its briefs.

The court also notes that record lacks reliable evidence of the precise COLA amounts for the relevant years. In addition, although neither party discussed a June 6, 2006 recalculation report (*id.* at HLI-00181-187), the court notes that the amounts included in a column titled "IB," which the court assumes to be inflation benefits or COLA, fails to correspond to the annual COLA amounts referenced in the June 7, 2006 letter. Moreover, the recalculation report shows a total overpayment calculation of $102,290.43, which is crossed out with $102,385.43

---

[10] On March 11, 2005, Defendant stated that the average monthly income for 2005 was $15,466.67; however the amount set forth in the September 1, 2005 decision on appeal comports with the amount stated by Plaintiff in his March 22, 2005 letter to Defendant ($14,733).

[11] The court notes that Plaintiff's briefs calculate the overpayment as $73,935.44. However, that calculation is based on the exhibit that the court struck from the record; thus, it is not relevant to the court's review here.

written next to it. (*Id.*)  There are also some other handwritten notes on the report, which the court is unable to decipher or interpret.  Given these discrepancies, the court has little confidence in Defendant's statement in the September 1, 2005 decision on appeal, that, although some figures had been stated incorrectly, the "system" had nonetheless calculated the total overpayment accurately.  (*Id.* at HLI-00078.)

In sum, the process by which Defendant arrived at its determination of the amount of overpayment – by calculating and recalculating and explaining and recalculating yet again, each time with different results – is extremely difficult, if not nearly impossible, to follow.  The administrative record also lacks evidence necessary to review some of Defendant's calculations or Plaintiff's related arguments.  Therefore, the court finds that there are genuine issues of material fact with respect to the overpayment calculations, that preclude judgment at this stage of the proceedings.  Accordingly, the court will deny both parties' motions for summary judgment with respect to the issue of overpayment.

IV.     **Conclusion**

For the foregoing reasons, the court will deny Plaintiff's Motion for Summary Judgment.  The court will grant in part and deny in part Defendant's Motion for Summary Judgment.  In addition, the court will grant Defendant's motion to strike Plaintiff's supplemental exhibit (Pl.'s Ex. O).  An appropriate order will issue.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  September 13, 2006.

20

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **CLAUDE FANELLI, M.D.,** | : | **CIVIL NO. 1:06-CV–0141** |
| **Plaintiff,** | : | **JUDGE SYLVIA H. RAMBO** |
| **v.** | : | |
| **CONTINENTAL CASUALTY COMPANY,** | : | |
| **Defendant.** | : | |

# O R D E R

In accordance with the foregoing memorandum of law, **IT IS HEREBY ORDERED THAT:**

1) Defendant Continental Casualty Company's Motion to Strike (Doc. 34) is **GRANTED**.

2) Plaintiff Claude Fanelli's Motion for Summary Judgment (Doc. 17) is **DENIED**.

3)  Defendant Continental Casualty Company's Motion for Summary Judgment (Doc. 20) is **GRANTED in part** and **DENIED in part** as follows:

a) Defendant's motion is denied with respect to the issue of whether Defendant's calculations regarding its overpayment of Plaintiff's long-term disability benefits were arbitrary and capricious; and

b) Defendant's motion is granted in all other respects.

21

4) This matter will proceed to trial, in accordance with the existing case management deadlines, limited to the issue of whether the amount of the overpayment of Plaintiff's long-term disability benefits was arbitrary and capricious under a somewhat heightened standard of review.

5) The Clerk of Court is directed to defer the entry of judgment pending further order of the court.

s/Sylvia H. Rambo
SYLVIA H. RAMBO
United States District Judge

Dated:  September 13, 2006.